IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER HAYDU,

                Plaintiff,                Civil Action No.
                                            3:12-CV-1424 (MAD/DEP)

     v.

UNITED STATES FEDERAL GOVERNMENT,

                Defendant.

---

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

CHRISTOPHER HAYDU, *Pro Se*
Box 292
Downsville, NY 13755

FOR DEFENDANT:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

Currently before me for review are a complaint, an application for

leave to proceed *in forma pauperis* ("IFP"), as amended, a motion for

judgment as a matter of law, also as amended, and a motion to

supplement the complaint, all of which have been submitted by *pro se* plaintiff Christopher Haydu. For reasons set forth below, I grant plaintiff's IFP application, but recommend that his complaint be dismissed with prejudice, and his motions for judgment as a matter of law and to supplement his complaint be denied.

I.      BACKGROUND

Plaintiff's claims in this action arise from his alleged attempt to commit suicide by drowning himself in a bathtub on July 29, 2012. Complaint (Dkt. No. 1) at 3. Plaintiff's complaint alleges that he attempted suicide as a result of his distress over alleged misconduct by the United States government, including on the part of three former Presidents, in connection with the Japanese attack on Pearl Harbor on December 7, 1941, the Gulf of Tonkin incident on August 2, 1964, and the attacks on the World Trade Center on September 11, 2011. *Id.* at 3-4. Liberally construed, plaintiff's complaint asserts a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The complaint names the United States government as the sole defendant in the action, and seeks damages in the amount of $100,000. *Id.* at 3.

II.    DISCUSSION

    A.    IFP Application

    After careful review of plaintiff's amended application, I find that he

qualifies for IFP status.  His request for permission to proceed IFP in this

action is therefore granted.

    B.    Sufficiency of Plaintiff's Complaint

        1.    Standard of Review

    Because I have found that plaintiff meets the financial criteria for

commencing this case *in forma pauperis*, I must next consider the

sufficiency of the claims set forth in his complaint in light of 28 U.S.C. §

1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in

forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the

court determines that – . . . (B) the action . . . (i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28

U.S.C. § 1915(e)(2)(B).  That section imposes a gatekeeping

responsibility upon the court to determine whether an action may be

properly maintained before permitting a plaintiff to proceed *in forma

pauperis*.  *Id*.

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court has an overarchingobligation to determine that a claim is not legally frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may dismiss frivolous complaint *sua sponte* notwithstanding the fact that the plaintiff paid the statutory filing fee); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (finding that a district court has the power to *sua sponte* dismiss a case for failure to state a claim). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999)

(quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[1]

        2.     <u>Application of Governing Legal Principles to Plaintiff's Claims</u>

Plaintiff's complaint asserts a claim against the United States by naming it as a defendant. *See generally* Complaint (Dkt. No. 1). The United States, however, is immune from suit, except where it has provided its consent. *See U.S. v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (internal quotation marks and alterations omitted)), *accord*, *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). Because the doctrine of sovereign immunity is jurisdictional, the burden is on the plaintiff to

---

[1]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

establish that his claim falls within an applicable waiver.  *Makarova*, 201 F.3d at 113.

One example of a circumstance in which United States has consented to be sued is found in the FTCA.  28 U.S.C. § 1346.  The FTCA provides federal district courts with jurisdiction over claims against the United States wherein the claimant seeks money damages arising from "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see also Makarova*, 201 F.3d at 113.  The FTCA qualifies its waiver of sovereign immunity in thirteen categories of claims.  28 U.S.C. § 2680; *see also Dolan v. U.S. Postal Serv*., 546 U.S. 481, 485 (2006).

"To state a claim under the FTCA, [a plaintiff]  must comply with several strictly construed prerequisites."  *Johnson v. Smithsonian*, 189 F.3d 180, 189 (2d Cir. 1999).  One of those prerequisites instructs that a plaintiff may not institute an action under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and

his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).

Here, plaintiff's complaint does not state that he has satisfied the requirement that his claim was presented to, and rejected by, the appropriate governmental agency before commencing this suit for damages against the government. *See generally* Dkt. No. 1. Accordingly, his complaint is subject to dismissal on the basis of sovereign immunity.[2]

3.    Nature of Dismissal

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be

_____

[2]    Additionally, even if plaintiff could satisfy this prerequisite, under the FTCA, "[a] tort claim against the United States [is] forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues[.]" *Johnson*, 189 F.3d at 189 (citing 28 U.S.C. § 2401(b)). Claims under the FTCA accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier. *Johnson*, 189 F.3d at 189 (*citing U.S. v. Kubrick*, 444 U.S. 111, 118 (1979)). Because plaintiff's claims involve events dating back to September 11, 2001, and earlier, the court has considerable doubt that plaintiff can satisfy this requirement of the FTCA. Indeed, the resources on which plaintiff relies to support his claims were published more than two years ago. Complaint (Dkt. No. 1) at 2-3. Therefore, even if plaintiff argues that he did not discover them until recently, his complaint reveals that he could have, with reasonable diligence, discovered the alleged bases for this action at the time those resources were published. Accordingly, plaintiff's complaint is also subject to dismissal based on the expiration of the statute of limitations governing claims made under the FTCA.

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding that repleading would be futile); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord*, *Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

Here, it is clear that plaintiff will be unable to pursue his claims in

this action against the United States unless, at a minimum, he can show that he has first complied fully with the requirements of the FTCA.  In light of his *pro se* status, I recommend that he be afforded the opportunity to amend his complaint in this action to reflect, if applicable, that he has complied with the jurisdictional prerequisites for bringing this action under the FTCA.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of

each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

C.  Plaintiff's Motions for Judgment as a Matter of Law and to Supplement His Complaint

In addition to his complaint and IFP application, plaint has submitted two additional documents for filing. One consists of a motion for judgment as a matter of law, prepared utilizing a Moore's Federal Practice form that is used in moving for judgment as a matter of law during trial, at the close of an opposing party's case-in-chief, pursuant to Rule 50 of the Federal Rules of Civil Procedure. Dkt. No. 5. Attached to this motion is a two-page document that the court has construed as a motion to supplement

his complaint to include a constitutional claim challenging the Child Abuse Prevent and Treatment Act ("CAPTA"). *Id.*

As it relates to plaintiff's motion for judgment as a matter of law, because this case has not reached the procedural juncture appropriate for plaintiff to move for judgment as a matter of law, I recommend denying this motion as premature. Additionally, even if the court were to construe the motion as one for summary judgment, I recommend that it be denied without prejudice for refiling at the proper procedural juncture because (1) as discussed above, plaintiff's complaint fails to state a cognizable claim, and (2) it fails to comply with the local rule 7.1 of the local rules of practice for this court governing motions for summary judgment. N.D.N.Y. L.R. 7.1(a)(3).

As it relates to plaintiff's motion to supplement his complaint, that motion is denied because plaintiff does not have standing to challenge the constitutionality of the provision of CAPTA mandating that the Secretary of Health and Human Services to "support the placement of children in kinship care arrangements[.]" 42 U.S.C. § 5113(b)(6).

"Standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Cent. States SE & SW*

*Areas Heath & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As such, standing directly implicates the court's subject matter jurisdiction, and may be raised by the court *sua sponte*. *Cent. States SE & SW Areas Health & Welfare Fund*, 433 F.3d at 198.

"At an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action[,] and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks and citations omitted); *Fulani v. Bentsen*, 35 F.3d 49, 51, 52 (2d Cir. 1994). Ordinarily, "a litigant must assert his or her own legal rights and interests, a cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). However, there is an exception to this general rule where a plaintiff seeks to assert a claim on behalf of a third party. *Powers*, 499 U.S. at 410. In that instance, "a plaintiff (1) must establish that he 'suffered an 'injury in fact,' thus giving

him or her a sufficiently concrete interest in the outcome of the issue in dispute,' (2) 'must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *Watanmaker v. Clark*, No. 09-CV-3877, 2010 WL 3516344, at * 5 (E.D.N.Y. Aug. 31, 2010) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Here, plaintiff's proposed supplement to his complaint does not allege that he has either been injured or threatened to be injured by the provisions of CAPTA.  *See generally* Dkt. No. 5 at 2-3.  Instead, plaintiff's proposal merely alleges that he is aware of instances where, as a result of this provision, children are placed in the care of "unfit grandparents."  *Id.* at 2.  This is not sufficient to establish standing.  For that reason, I recommend that plaintiff's motion to supplement his complaint be denied.

III.    SUMMARY AND CONCLUSION

Based upon the court's review of plaintiff's IFP application and accompanying complaint, it is therefore hereby

ORDERED that plaintiff's amended application for leave to proceed *in forma pauperis* in this action, (Dkt. No. 4) is GRANTED; and it is further respectfully

13

RECOMMENDED that plaintiff's complaint in this action be DISMISSED, with leave to replead within thirty days of the date of an order adopting this recommendation, and that if no amended complaint is filed within that time period, that the clerk be directed to close the case; and it is further

RECOMMENDED that plaintiff's amended motion for judgment as a matter of law (Dkt. No. 5) be DENIED as premature and improper, without prejudice to plaintiff's right to renew the motion at an appropriate procedure juncture in the event the action should go forward; and it is further

RECOMMENDED that plaintiff's motion to supplement his complaint (Dkt. No. 5) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     January 29, 2013
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B)* *Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where the "'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also* *Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* *Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see* *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln
Work-Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe # 1,
Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.
No. Civ.A. 95CV1641RSPDS.

Sept. 22, 1997.

Kenneth Brown, State Court Institute-Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

DECISION AND ORDER

POOLER, J.

*1 The above matter comes to me following a
Report-Recommendation by Magistrate Judge Daniel
Scanlon, Jr., duly filed on April 17, 1997. Following ten
days from the service thereof, the Clerk has sent me the
entire file, including any and all objections filed by the
parties herein.

Plaintiff Kenneth Brown commenced this Section

1983 civil rights action on November 17, 1995. On
February 12, 1996, Magistrate Judge Scanlon ordered
Brown to submit an amended complaint alleging the
specific acts committed by the individuals named as
defendants which Brown claimed violated his
constitutional rights. Brown filed an amended complaint
on March 21, 1996. In his amended complaint, Brown
alleged that defendants violated his rights under the Eighth
and Fourteenth Amendments by failing to process properly
his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact he
had never violated the conditions of his parole. For a more
complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams
made a motion to dismiss for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No.
14, at 2. On August 19, 1996, defendants Bishop, Magee,
Barton, and McMahan made a motion to dismiss the
complaint against them or, in the alternative, for summary
judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss
for failure to state a claim. Dkt. No 34. On April 17, 1996,
Magistrate Judge Scanlon recommended that all
defendants' motions to dismiss be granted and that the
complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave
to file a second amended complaint and a copy of his
proposed amended complaint. Dkt. No. 53. I turn first to
the last motion filed, Brown's motion for leave to amend
his complaint a second time.

Brown seeks to file a second amended complaint
"setting forth in detail the personal involvement of each
defendant and how their acts of commission and omission
served to deprive plaintiff of Constitutionally secured
rights." Dkt. No. 53. The district court has discretion
whether to grant leave to amend. Ruffolo v. Oppenheimer

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

& Co., 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss-the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

*2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to

allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a de novo determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for pro se pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. See Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[FN1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

> FN1. I note, however, that the report-recommendation would survive even *de novo* review.

## CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

## ORDER and REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

## BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1-2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5-7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8-10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11-14; Exs. C-J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15-17; Exs. F-I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.
E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart

and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

N.D.N.Y.,1997.

Brown v. Peters
Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**


*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.


*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.


*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).


*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).


*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.


*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.


*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]   The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure.* For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against them. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. Cf. *Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] *Civ. No. 94-C944 (D.D.C. 1994), Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Mike WATANMAKER, Plaintiff,
v.
Warren G. CLARK, Chief Clerk, District Court, Suffolk
County; Ronald E. Lipetz, Esq., Assistant District
Attorney; Thomas J. Spota, District Attorney for Suffolk
County; John C. Cochrane, County Treasurer of the
County of Suffolk; John Does 1–10; and Jane Does
1–10, Defendants.
No. 09–CV–3877 (JFB)(ARL).

Aug. 31, 2010.
Mike Watanmaker, pro se.

Christine Malafi, Suffolk County Attorney, by Brian
Mitchell, Assistant County Attorney, Hauppauge, NY, for
the County defendants.

Andrew M. Cuomo, Attorney General of the State of New
York, by Lori Pack, Assistant Attorney General,
Hauppauge, NY, for the State defendant.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

*1 *Pro se* plaintiff Mike Watanmaker ("plaintiff")
filed the complaint in this action under 42 U.S.C. § 1983
on September 8, 2009. The complaint names as defendants
Ronald E. Lipetz, a Suffolk County Assistant District
Attorney ("Lipetz"); Thomas J. Spota, the Suffolk County
District Attorney ("Spota"); and John C. Cochrane, the
former Suffolk County treasurer ("Cochrane" or "the
treasurer") [FN1] (collectively "the County defendants") as
well as Warren G. Clark, Chief Clerk, District Court of
Suffolk County ("Clark" or "the State defendant"). The
complaint also names ten "John Doe" and "Jane Doe"
defendants but does not specify the role of these
defendants in the events giving rise to plaintiff's claims.

All defendants are sued in both their individual and
official capacities.

> FN1. There is some dispute about whether
> defendant Cochrane was the county treasurer at
> the time of the events at issue here. In its moving
> brief, the County states that Angie M. Carpenter
> was the treasurer during the relevant period. (*See*
> County Def.'s Mem. of Law at 1 n. 1.) In
> plaintiff's opposition brief, he appears to accept
> the county's statement as correct. (*See* Pl.'s Opp.
> Mem. of Law at 1.) In any event, as set forth
> below, regardless of the treasurer's identity,
> plaintiff's claims against him or her cannot
> succeed.

According to the complaint, plaintiff posted bail for
Steven Dickman ("Dickman"), a defendant in a criminal
case in Suffolk County District Court. When Dickman
failed to appear at a court appearance, the bail was
forfeited. Plaintiff contends that defendants failed to give
Dickman and him adequate notice of the court appearance
that resulted in the forfeiture. In particular, plaintiff asserts
that defendant Lipetz mailed a notice to an address that
Dickman had not lived at for over one year.

Although the exact role played by the other
defendants is somewhat difficult to ascertain from the
complaint, plaintiff contends that all the defendants
engaged in unconstitutional actions and practices that
failed to give adequate notice of future court appearances
to certain criminal defendants and to people who post bail
for such persons. Plaintiff also contends that he was
deprived of proper notice and a hearing before the bail
was forfeited and asserts that the forfeiture of bail without
a hearing is unconstitutional. In addition, plaintiff brings
claims under the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, and the New York Freedom of
Information Law ("FOIL"), N.Y. Public Officer's Law §
87, arising from the defendants' alleged failure to provide
him with certain information.

Both the County defendants and the State defendant
have moved to dismiss. Plaintiff has cross-moved for

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

summary judgment. For the reasons that follow, the Court grants the motions to dismiss in their entirety on plaintiff's federal claims and denies plaintiff's motion for summary judgment. Specifically, the Court concludes that dismissal is warranted because (1) plaintiff lacks standing to assert claims on behalf of Dickman, (2) the Eleventh Amendment bars the claims against defendants Clark, Spota, and Lipetz in their official capacities; and (3) the doctrine of absolute immunity provides a complete defense to the remaining § 1983 claims. Plaintiff also fails to state a Freedom of Information Act claim because he directed his information requests to state, as opposed to federal, agencies. The Court declines to exercise supplemental jurisdiction over any state-law claims.

## I. BACKGROUND

**\*2** The following facts are taken from the complaint ("Compl.") and the documents attached thereto.[FN2] These facts are not findings of fact by the Court, but rather are assumed to be true and are construed in the light most favorable to the non-moving party. *Giardina v. Nassau County,* No. 08 CV 2007(JFB)(WDW), 2010 WL 1850793, \*1 (E.D.N.Y. May 7, 2010).

> FN2. Plaintiff also attached several exhibits to the complaint. The Court may consider these exhibits in adjudicating defendants' motion to dismiss. *See, e.g., In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (explaining that, in adjudicating a motion to dismiss under Rule 12(b)(6), the Court may consider, *inter alia,* "documents attached to [the complaint] or incorporated in it by reference").

### A. Facts

Plaintiff posted bail in the sum of $10,000 for non-party Steven H. Dickman, who was incarcerated at the Suffolk County Correctional Facility in June of 2008 in connection with a misdemeanor charge for Unauthorized Use of a Vehicle in the Third Degree. (Compl. ¶¶ 2, 108; Exs. 1, 3, and 4.) Both Dickman and plaintiff appeared in Suffolk County District Court before Judge Dennis Cohen on June 16 or 17, 2008 and on July 1, 2008, as directed by the court. Plaintiff alleges that Judge Cohen refused to set a "control date" at the July 1, 2008 appearance. (Compl.¶¶

7, 23, 26.) Thereafter, Dickman missed a September 2008 court date. Plaintiff claims that there was no "actual notice" given to him regarding that court date and that, although defendant Lipetz did send a notice of the court date to Dickman, the notice was sent to an address at which Dickman had not lived at for over one year. (Compl.¶¶ 3, 15, 28, 76, 101–102.) Plaintiff claims this was done intentionally so as to induce Dickman's non-appearance. (Compl.¶¶ 19, 23, 37, 53, 56.) A warrant was issued for Dickman's arrest. (Compl.¶ 68.) It is unclear whether Dickman was actually arrested.

Plaintiff further alleges, "upon information and belief" that after Dickman failed to appear "in or about September ... 2008 ... bail has been deemed forfeited and seized by the Suffolk County Treasurer, in whole or in part, without a hearing." (Compl. ¶ 24; *see also* Compl. ¶ 37.)

In December 2008, after Dickman's alleged non-appearance, plaintiff claims to have filed two motions before Judge Cohen in Suffolk County District Court seeking to set aside any forfeiture of the bail. (Compl.¶¶ 24, 115, 117.) Plaintiff alleges that these motions are still pending before Judge Cohen. (Compl.¶¶ 24, 60, 67, 76–78, 115)

In this case, plaintiff contends that, because defendants did not give him or Dickman notice of Dickman's court appearance and because bail was revoked without a hearing and adequate notice, his due process rights were violated. (*See, e.g.,* Compl. ¶¶ 14, 29). Plaintiff further alleges that he sent requests pursuant to FOIA and FOIL to the Suffolk County District Attorney, the "Chief Clerk of the U.S. District Court",[FN3] Suffolk County and Suffolk County Attorney's Office seeking: (1) copies of the decision, order, and other documents in *People v. Dickman,* Docket No. 2008 SU/027226; (2) bail payment documents; (3) the date of receipt of bail by the Suffolk County Treasurer; (4) the current status of the bail account and whether bail had been forfeited; (5) a copy of the rules and regulations that are provided to a payor of bail together with a copy of the statement signed by plaintiff setting forth his obligation to produce Dickman on each court date; and (6) documents relating to Suffolk District Court Docket number 2007 SU/20259. (Compl.Ex. 1.). Plaintiff contends none of the recipients

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

responded to his requests.

> FN3. The Court interprets this recipient as the Chief Clerk of the *Suffolk County* District Court because the request was sent the "Cohalan Court Complex, 400 Carleton Ave., Central Islip, N.Y. 11722," the address of that court. (*See* Compl. Ex. 1.) The requests are also accompanied by time stamps, purporting to reflect the time and date these requests were delivered to Suffolk County Attorney's Office and to "Suffolk County District Court." (Compl.Ex. 2.). The Chief Clerk of the U.S. District Court is not a party to this action.

**\*3** As a result of the foregoing, plaintiff seeks money damages inclusive of the $10,000 he posted as bail with interest at the statutory rate of 9% *per annum,* plus the costs and disbursements of this lawsuit.[FN4] (Compl.¶¶ 29, 33, 40, 61, 108). Plaintiff also seeks a declaratory judgment that the Suffolk County District Court's procedures regarding notice and the forfeiture of bail without a hearing are unconstitutional. Finally, plaintiff requests that the information sought pursuant to FOIA and FOIL be provided to him.

> FN4. The complaint is inconsistent with respect to the precise total amount of money damages plaintiff actually seeks. (*Compare, e.g.,* Compl. ¶ 61 ($75,000) *with* Compl. ¶ 108 ($50,000).)

### B. Procedural History

Plaintiff filed the complaint in this Court on September 8, 2009. Subsequently, both the County defendants and the State defendant filed letters with the Court requesting a pre-motion conference in anticipation of moving to dismiss.

By Order dated October 23, 2009, the Court dispensed with its pre-motion conference requirement and set a briefing schedule for the defendants' motions. The defendants timely filed their motions to dismiss the complaint. Plaintiff timely opposed the motions and also filed a cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

By Order dated January 21, 2010, the undersigned directed defendants to respond to plaintiff's cross-motion in their reply briefs and extended the deadline for the submission of reply papers to February 12, 2010. Defendants complied with this Order, and plaintiff filed his reply in further support of his summary judgment motion on March 16, 2010. All pending motions are now fully submitted.

### II. MOTIONS TO DISMISS

#### A. Standard of Review

Both the State defendant and the County defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' " *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F .3d 86, 91 (2d Cir.2010) (quoting *Twombly,* 550 U.S. at 555). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**\*4** Where, as here, the plaintiff is proceeding *pro se,* "[c]ourts are obliged to construe the [plaintiff's] pleadings

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

... liberally." *McCluskey v. N.Y. State Unified Court Sys.,* No. 10–CV–2144(JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) and *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still " 'state a claim to relief that is plausible on its face' " to survive a motion to dismiss. *Mancuso v. Hynes,* 09–4393, 2010 WL 2131009, at *1 (2d Cir. May 27, 2010); *see also Iqbal,* 129 S.Ct. at 1949); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

### B. Discussion

#### 1. New York's Bail Forfeiture Procedure

Because the factual basis for plaintiff's claim involves his posting of bail and the forfeiture of that bail, the Court briefly outlines the relevant legal framework for the forfeiture of bail in New York State.

New York Criminal Procedure Law § 540.10 provides the generally applicable procedures for the forfeiture of bail. Pursuant to § 540 .10(1), when a criminal defendant fails to appear as required without sufficient excuse, bail is generally forfeited. Section 540.10(1) provides, in relevant part:

> If, without sufficient excuse, a principal does not appear when required or does not render himself amenable to the orders and processes of the criminal court wherein bail has been posted, the court must enter such facts upon its minutes and the bail bond or the cash bail, as the case may be, is thereupon forfeited.

N.Y.Crim. Proc. Law § 540.10(1). Once the defendant's nonappearance is entered on the court's minutes, the bail is deemed forfeited and the forfeiture is thereafter reduced to a written order of forfeiture. *Id.; see also Int'l Fidelity Ins. Co. v. City of N.Y.,* 263 F.Supp.2d 619, 625 (E.D.N.Y.2003).

Upon receipt of the order of forfeiture, in the case of cash bail, the statute requires the county treasurer to provide written notice to the person who posted the bail. The treasurer may then convert the bail to the use of the county at any time after final adjournment of the court or forty-five days from when the notice was given, whichever comes later. § 540.10(2). The Legislature amended the statute in 1984 to include the post-forfeiture notice provision with the "clear purpose" to "provide *notice* of the forfeiture to the person who posted cash bail, thereby affording such person both the knowledge that the bail was forfeited and the opportunity to make *timely* application for remission." *People v. Williams,* 512 N.Y.S.2d 1007, 1009 (County Court, Schoharie County 1987) (emphasis in original).

Once there has been a forfeiture of bail, § 540.30 provides the mechanism for remission. Pursuant to the statute, if the forfeiture was ordered by a local criminal court, such as Suffolk County District Court, an application for remission may be made to either a superior court in the county or to the district court that ordered the forfeiture. N.Y.Crim. Proc. Law § 540.30(1)(b). Such "application must be made within one year after the forfeiture of the bail is declared ...." § 540.30(2).

#### 2. Subject Matter Jurisdiction

**\*5** As a threshold matter, the Court must determine whether it has subject matter jurisdiction to adjudicate plaintiff's claims. "Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman,* 549 U.S. 437, 439 (2007). The question of the Court's subject matter jurisdiction may be raised at any time by the parties or by the court *sua sponte. United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994).

##### a. Standing

Here, defendant Clark argues that plaintiff lacks standing to bring this action.[FN5] The Court agrees in part. "To invoke the jurisdiction of the federal courts and establish standing[,] a plaintiff must '[1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.' " *Sharpe v. Mental Health Sys. of the U.S.,* 357 F. App'x 373, 374 (2d Cir.2009) (quoting *Fulani v. Bentsen,* 35 F.3d 49, 51–52 (2d Cir.1994)) (last three alterations in original). To establish standing to assert a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

claim on behalf of a third party, a plaintiff (1) must establish that he "suffered an 'injury in fact,' thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute," (2) "must have a close relation to the third party," and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio,* 499 U.S. 400, 411 (1991) (internal citations and quotations omitted); *accord Fenstermaker v. Obama,* 354 F. App'x 452, 454 (2d Cir.2009).

> FN5. The State defendant brings his motion to dismiss under Rule 12(b)(6). However, because the State defendant's standing argument, and his *Rooker–Feldman* argument, *see infra,* implicate the court's subject-matter jurisdiction, they are more appropriately brought under Rule 12(b)(1). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n. 6 (2d Cir.2006) (noting that Second Circuit has considered standing challenges under both rules in the past but that 12(b)(1) is the more appropriate rule); *see also Lance,* 549 U.S. at 438 n. * (explaining that *Rooker Feldman* "concerns a district court's subject-matter jurisdiction"). In any event, as discussed above, the Court is independently obligated to determine whether it has subject-matter jurisdiction and, accordingly, considers the standing and *Rooker Feldman* arguments regardless of which rule the State defendant asserts them under.

In this case, to the extent plaintiff relies on, as a separate, stand-alone constitutional violation, the fact that Dickman did not receive notice of his court appearance, plaintiff lacks standing to assert that claim. The complaint provides no basis to infer that plaintiff suffered an injury based solely on the lack of notice to Dickman or that plaintiff and Dickman have a sufficiently close relationship such that plaintiff can assert Dickman's rights [FN6] or that Dickman is somehow hindered from pursuing his own interests.

> FN6. *Cf. Fenstermaker,* 354 F. App'x at 455 (finding that attorney did not have standing to assert claims on behalf of potential clients and explaining that "[a] close relation supporting

third-party standing exists when 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.' " (quoting *Singleton v. Wulff,* 428 U.S. 106, 115 (1976))).

Plaintiff does have standing, however, to challenge the forfeiture of bail and the procedures used to effect the forfeiture. Clearly, plaintiff, as the person who posted the bail, has allegedly suffered a personal injury (i.e., loss of the money) that could be remedied by a favorable court decision ordering remission of the forfeiture. *Cf. United States v. Markiewicz,* No.Crim. A. 96–CR–122(RSP), 1998 WL 37592, at *1 (N.D.N.Y. Jan. 28, 1998) ("A district court has jurisdiction to consider a third party's motion seeking release of bail funds posted on behalf of a criminal defendant."); *see also People v. Castro,* 464 N.Y. S.2d 650, 654 (Sup.Ct.1983) (finding that, for purposes of New York state law, third-party depositor of cash bail had standing to vacate a cash bail forfeiture).

### b. *Rooker Feldman*

**\*6** The State defendant also argues, in conclusory fashion, that the *Rooker–Feldman* doctrine bars plaintiff's claims. The Second Circuit has delineated four requirements for *Rooker Feldman* to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany County Bd. of Elecs.,* 422 F.3d 77, 85 (2d Cir.2005) (internal quotations and alterations omitted). The Court declines to apply the doctrine in this case because the State defendant fails to provide any information indicating that plaintiff lost any state court judgment. Additionally, the complaint can be construed such that the injuries claimed by plaintiff resulted not from any judgment itself but from a lack of adequate process both before and after Dickman's missed court appearance. Therefore, the Court declines to dismiss the complaint on *Rooker–Feldman* grounds.

In sum, the Court has subject matter jurisdiction over

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

plaintiff's claims, except to the extent that plaintiff seeks to assert a stand-alone claim based on the fact that Dickman did not receive notice of a court appearance.

### 3. Failure to State a § 1983 Claim

Plaintiff's claims, however, are subject to dismissal for other reasons. Specifically, the Eleventh Amendment bars any claim against defendants Clark, Lipetz, and Spota in their official capacities. Additionally, Clark, Lipetz, Spota, and Cochrane are entitled to absolute immunity on all remaining § 1983 claims.

### a. Eleventh Amendment

To the extent that plaintiff seeks to sue defendants Clark, Lipetz and Spota in their official capacities under § 1983, the Eleventh Amendment bars any such claim. The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns...." *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (quoting *W. Mohegan Tribe & Nation v. Orange County,* 395 F.3d 18, 20 (2d Cir.2004)) (alterations in original). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989). Eleventh Amendment immunity also extends to suits against state officers in their official capacities. *See id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye,* No. 06–CV–5169 (DLI)(CLP), 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to

be lawsuits against the state.").[FN7]

FN7. A narrow exception to this rule exists for official-capacity suits against state officers seeking prospective injunctive relief. *See Will,* 491 U.S. at 71 n. 10. Even liberally construing the *pro se* complaint, there is no basis for this exception here.

**\*7** Here, defendants Clark, Spota, and Lipetz are state officers. Specifically, defendant Clark is a state officer because he is Chief Clerk of the District Court of Suffolk County, and the District Court of Suffolk County is an arm of the New York state court system. *Cf. Casaburro v. Guiliani,* 986 F.Supp. 176, 182 (S.D.N.Y.1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds); *see also Davis v. State of N.Y.,* No. 90 Civ. 6170(MBM), 1991 WL 156351, at *2 (S.D.N .Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), *aff'd* 106 F. App'x 82 (2d Cir.2004).[FN8]

FN8. *See generally Gollomp v. Spitzer,* 568 F.3d 355, 366–67 (2d Cir.2009) ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); New York Courts, http://www.nycourts.gov/litigants/courtguides/CtUsersNasSuff02.pdf (last visited Aug. 24, 2010) (providing background information regarding the role of the Suffolk County District Court in the New York State court system).

Additionally, Defendants Spota and Lipetz—who are, respectively, the Suffolk County District Attorney and a Suffolk County Assistant District Attorney—are state officers by virtue of their role as state prosecutors. *See Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (affirming dismissal of claims against current and former Kings County District Attorneys and Assistant District Attorneys on Eleventh Amendment grounds); *McCray v. City of N.Y.,* Nos. 03 Civ. 9685(DAB), 03 Civ. 9974(DAB), 03 Civ. 10080 (DAB), 2007 WL 4352748, at *12 (S.D.N.Y. Dec. 11, 2007) (" 'When prosecuting a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

criminal matter, a district attorney in New York represents the state, not the county.' " (quoting *Alvarez v. Doe,* No. 03 Civ. 7740, 2004 WL 1874972, at *4 (S.D.N.Y. Aug. 13, 2004))). Thus, because these defendants are state officers and because New York state has not waived its sovereign immunity for suits under § 1983,[FN9] these defendants are immune from suits in their official capacity.

> FN9. *See, e.g., Mamot v. Bd. of Regents,* 367 F. App'x 191, 192 (2d Cir.2010) ("It is well-established that New York has not consented to § 1983 suits in federal court....").

### b. Absolute Immunity

Defendants also contend that they are entitled to absolute immunity. Specifically, defendants Spota and Lipetz assert they are entitled to absolute immunity by virtue of their role as prosecutors, and defendants Clark and Cochrane argue they are entitled to absolute immunity because they played a quasi-judicial role in this case. As set forth below, the Court agrees.

### (1) Prosecutorial Immunity

" 'It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.' " *Crews v. County of Nassau,* No. 06–CV–2610 (JFB)(WDW), 2007 WL 4591325, at *13 (E.D.N.Y. Dec. 27, 2007) (quoting *Shmueli v. City of N.Y.,* 424 F.3d 231, 236 (2d Cir.2005)). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Hill v. City of N.Y.,* 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994)). For example, in *Hill,* the Second Circuit held that an Assistant District Attorney's alleged acts of, *inter alia,* "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661. On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does

not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest—that is, when he performs functions normally associated with a police investigation—he loses his absolute protection from liability."). "In determining whether absolute immunity obtains, [courts] apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)).

**\*8** Here, defendants Spota and Lipetz have absolute prosecutorial immunity because their actions fall squarely within the scope defined by the Supreme Court. Even assuming, as the Court must, that Lipetz intentionally mailed the notice to the wrong address, he did so as part of his function as an advocate in the prosecution against Dickman. *See Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir.1993) ("[T]he prosecutor's determination to notify or failure to notify is intimately associated with the hearing and is simply a litigation-related duty. Giving notice to witnesses, victims or defendants is certainly one of those core prosecutorial functions which is protected by absolute immunity."); *Banda v. Burlington County,* Civil Action No. 03–2045(EJI), 2006 WL 2739718, at *6 (D.N.J. Sept. 26, 2006) (finding prosecutors entitled to absolute immunity on § 1983 claim that they failed to provide criminal defendant with proper notice of criminal forfeiture hearing); *see also Haugen v. Fields,* No. CV05–3109–RHW, 2007 WL 39981, at *5 (E.D.Wash. Jan. 5, 2007) (finding social worker entitled to quasi-prosecutorial immunity on claim that she failed to provide adequate notice to parent of hearing regarding whether child would be put in foster care). Accordingly, defendants Lipetz and Spota are entitled to absolute prosecutorial immunity, and plaintiff's § 1983 claims against these defendants are dismissed.[FN10]

> FN10. The Court also notes that the plaintiff's § 1983 claim against defendant Spota is subject to dismissal for the additional reason that the complaint does not allege any personal

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

involvement by defendant Spota. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2004); *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (explaining that personal involvement by the defendant in any constitutional violation is a prerequisite to an award of damages under Section 1983); *Jackson v. County of Nassau,* No. 07–CV–245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009) (" '[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " (quoting *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999))). Moreover, the doctrines of *respondeat superior* or vicarious liability do not apply to § 1983 claims. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).

(2) Judicial Immunity

Defendants Clark and Cochrane assert that they are entitled to absolute judicial immunity. The Court agrees.

Although neither Clark nor Cochrane is a judge, judicial immunity can extend to non-judges "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985). Thus, absolute judicial immunity can apply to officials such as court clerks when the clerks perform tasks integral to the judicial process, such executing a judge's orders. *See Rodriguez v. Weprin,* 116 F.3d 62, 67 (2d Cir.1997) ("Even 'when functions that are ... administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, ... that officer's immunity is also available to the subordinate.' " (quoting *Kincaid v. Vail,* 969 F.2d 594, 601 (7th Cir.1992))); *Sindram v. Suda,* 986 F.2d 1459, 1460 (D.C.Cir.1993) ("[C]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process."); *McKnight v. Middleton,* 699 F.Supp.2d 507, 525 (E.D.N.Y.2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity."); *Isasi v. Heinemann,* No. 08–CV5284 (BMC), 2009 WL 159601, at *2 (E.D.N.Y.

Jan. 22, 2009) (explaining that court clerks are entitled to absolute immunity where "the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge"). On the other hand, when a judge or clerk is performing duties unrelated to the adjudicative process, only qualified immunity attaches. *See, e.g., Forrester v. White,* 484 U.S. 219, 229–30 (1988) (finding judge not entitled to absolute immunity for decision to demote and fire a probation officer); *Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 683–86 (D.C.Cir.2009) (finding that juror officer not entitled to absolute quasi-judicial immunity for dismissing allegedly disruptive grand juror because act was an administrative one, unrelated the adjudicative context).

**\*9** In determining whether absolute immunity or qualified immunity applies to a particular officer, courts apply "a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Forrester,* 484 U.S. at 224. "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* at 227; *see also Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir.2009) (explaining, in context of suit against judge, that "[i]n employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature").

Here, Clark and Cochrane are entitled to absolute judicial immunity. Plaintiff's precise allegations against these particular defendants are somewhat difficult to comprehend. It is apparent, however, that, in the bail forfeiture process, the court clerk and county treasurer act pursuant to a judge's orders and that they are an integral part of that judicial process. The procedure for forfeiture of bail can begin only after the a judge enters an order of forfeiture. *See* N.Y.Crim. Proc. Law § 540.10(1), (3). Once the order is filed with the clerk of the court, the clerk simply dockets the order and enters a judgment. *See id. §* 540.10(3). Once the treasurer receives the order, he or she provides notice to the person who posted the bail and, after a period of time, may apply the money deposited as bail to the use of the county treasury. *See id. § 540.10*(2); *see also* Peter Preiser, McKinney's Practice Commentaries, N.Y.Crim. Proc. Law § 540.10 ("In the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

case of cash bail, upon receipt of the order of forfeiture, the treasurer simply gives notice to the person who posted the bail and the treasurer then may convert same to the use of the county...."). Therefore, the clerk and the treasurer merely carry out a judge's orders that bail be forfeited to the county and, as such, are cloaked with the judge's absolute immunity. *See generally Smith v. City of Hammond,* 388 F.3d 304, 306 (7th Cir.2004) (dismissing § 1983 claim where plaintiff did not "indicate what role he thinks the clerk or the police chief plays in Judge Harkin's bail decisions except to execute them," and "[a]s mere executants they would be sheltered by the judge's absolute immunity ...."). FN11 In sum, even assuming bail was forfeited, Clark and Cochrane acted pursuant to a judge's orders and did so as an integral part of the judicial process.

> FN11. Although plaintiff appears to assert that Clark should have provided him with notice of Dickman's court appearances before the forfeiture of bail, as noted above, plaintiff lacks standing to assert a constitutional violation based solely on a lack of notice to Dickman. In any event, absolute judicial immunity would still apply Clark's actions with respect to scheduling or docketing court dates and to sending orders to Dickman and/or plaintiff. *Cf. Dzwonczyk v. Suddaby,* No. 5:10–CV–300, 2010 WL 1704722, at *6 (N.D .N.Y. Apr. 28, 2010) (dismissing *Bivens* claim against Clerk of the Court on absolute immunity grounds where claims "relat [ed] to the way documents were filed with the court or how orders were sent to plaintiff ...."). *See generally Rodriguez,* 116 F.3d at 66–67 (explaining that "[a] court's inherent power to control its docket is part of its function of resolving disputes" and finding that court clerks were absolutely immune in suit alleging harms from their delay in scheduling plaintiff's appeal).

The Court notes that the existence of procedures for vacating a bail forfeiture order provides a clear rationale as to why the law extends absolute immunity to defendants Clark and Cochrane under the circumstances. One of the policies underlying absolute judicial immunity is that "safeguards" inherent in the judicial process, such as the

ability to appeal, lessen the need for damage suits against judges and clerks because these safeguards provide an alternative means of remedying unconstitutional conduct. *See, e.g ., Sindram,* 986 F.2d at 1461 ("Suits against clerks for damages, like those against judges, are generally not necessary to control unconstitutional conduct in light of the numerous safeguards that are 'built into the judicial process,' especially the 'correctability of error on appeal.' " (quoting *Butz v. Economou,* 438 U.S. 478, 512 (1978))); *see also Forrester,* 484 U.S. at 227 ("Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability."). Here, New York Criminal Procedure Law § 540.30 allows a depositor of cash bail—such as plaintiff here—to move a court to remit a bail forfeiture in the interests of justice. *See* N.Y.Crim. Proc. L. § 540.30 (explaining, *inter alia,* that "[t]he court may grant the application and remit the forfeiture ... upon such terms as are just"); *see, e.g., People v. Montgomery,* 614 N.Y.S.2d 277, 278 (App.Div.1994) (granting application by depositor of cash bail for remission of forfeiture); *People v. Salabarria,* 503 N.Y.S.2d 411, 413 (App.Div.1986) (same). Therefore, although plaintiff seems to allege that the clerk and the treasurer erred by failing to provide him with adequate notice of the bail forfeiture, New York law contains a "safeguard" by which plaintiff can seek to remedy any improper conduct. Indeed, plaintiff appears to have attempted to take advantage of this procedure by filing motions before Judge Cohen in the Suffolk County District Court.FN12 In short, both the role of the clerk and the treasurer in the bail forfeiture process and the policies underlying judicial immunity support giving Clark and Cochrane absolute judicial immunity here.

> FN12. Similarly, even if defendants were not entitled to absolute immunity, the availability of procedures for the remission of bail would bar plaintiff's § 1983 claim as a matter of law. Viewing the allegations in the complaint in the light most favorable to plaintiff, plaintiff essentially asserts defendants failed to provide him with adequate procedural due process before seizing the bail plaintiff had posted. However, a plaintiff cannot succeed on a § 1983 due process

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

claim where state law provides an adequate post-deprivation remedy. *See, e.g., Davis v. New York,* 311 F. App'x. 397, 400 (2d Cir.2009) ("The property loss alleged by [plaintiff]—whether intentional or negligent—will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' " (quoting *Hudson v. Palmer,* 468 U.S. 517, 533 (1984))). Here, as noted above, plaintiff can seek (and apparently has sought) to have the forfeiture remitted. Furthermore, to the extent plaintiff contends the state court has unreasonably delayed in deciding these claims, plaintiff could seek a writ of mandamus in state court pursuant to N .Y. C.P.L.R. Article 78. *See generally Hellenic Am. Neighborhood Action Comm. v. City of N. Y.,* 101 F.3d 877, 881 (2d Cir.1996) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation..... An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit." (internal citations omitted)). In short, New York law provides adequate remedies for the injuries alleged by plaintiff. *Cf., e.g., David v. N.Y.P.D. 42nd Precinct Warrant Squad,* No. 02 Civ. 2581(DC), 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) ("Because New York provides an adequate post-deprivation remedy in the form of state law causes of action ... [plaintiff's] § 1983 due process claim ... is dismissed ...."). As such, even if defendants were not entitled to absolute immunity, plaintiff's § 1983 claim would fail as a matter of law.

**\*10** For the reasons set forth above, plaintiff's § 1983 claims against Clark and Cochrane are dismissed.

### 4. Freedom of Information Claims

As noted above, plaintiff alleges that he filed Freedom of Information requests with the Suffolk County District Attorney, the Chief Clerk of the District Court, Suffolk

County and the Suffolk County Attorney's Office for documents concerning Dickman's cases as well as for documents relating to the bail posted by plaintiff. Plaintiff alleges that none of the information he requested was provided.

Although difficult to discern, the Court liberally construes plaintiff's allegations to purport to assert claims under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the New York Freedom of Information Law ("FOIL"), N.Y. Public Officer's Law § 87.

FOIA, however, only applies to the federal government and not state government agencies. *Grand Cent. Partnership, Inc. v. Cuomo,* 166 F.3d 473, 484 (2d Cir.1999) ("[I]t is beyond question that FOIA applies only to federal and not to state agencies."). The FOIA requests submitted by plaintiff were all served on state agencies. Therefore, FOIA does not apply, and plaintiff's FOIA claim is dismissed.

Given the dismissal of all of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim brought pursuant to FOIL or any other state law claims plaintiff may be attempting to assert. *See Birch v. Pioneer Credit Recovery, Inc.,* No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) ("In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.' " (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986)))[FN13] Accordingly, plaintiff may pursue any such claims in state court.

> [FN13.] Similarly, to the extent plaintiff asserts a claim against defendant Lipetz under the New York Judiciary Law (*see, e.g.,* Compl. ¶ 13), the Court declines to exercise supplemental jurisdiction over that claim.

### 5. Opportunity to Replead

As set forth above, plaintiff's federal claims are subject to dismissal. The Court has also considered

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)

(Cite as: 2010 WL 3516344 (E.D.N.Y.))

whether plaintiff should be given an opportunity to replead. The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotation omitted). Though mindful of the plaintiff's *pro se* status, the Court finds that any attempt to amend the complaint would be futile. It is apparent that plaintiff cannot assert a plausible § 1983 claim because he lacks standing to assert a claim on behalf of Dickman and because defendants are immune from suit. Accordingly, any attempt to replead a § 1983 claim would be futile. *Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 53 (2d Cir.1999)(explaining that if a plaintiff cannot demonstrate that he is able to amend his complaint "in a manner which would survive dismissal, [the] opportunity to replead is rightfully denied."). Similarly, repleading is futile with respect to plaintiff's FOIA claim because plaintiff cannot assert a FOIA claim against state agencies.

### III. MOTION FOR SUMMARY JUDGMENT

**\*11** Because the claims against defendants do not survive the motions to dismiss, the Court denies as moot plaintiff's motion for summary judgment.

### IV. CONCLUSION

For the reasons stated above, the defendants' motions to dismiss are granted in their entirety on plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Given the dismissal of the complaint, plaintiff's cross-motion for summary judgment is denied as moot.

SO ORDERED.

E.D.N.Y.,2010.

Watanmaker v. Clark
Not Reported in F.Supp.2d, 2010 WL 3516344 (E.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.